UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JOHNSON MARCRAFT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:15-1482 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| WESTERN SURETY COMPANY, ) | |
| ) | MAGISTRATE JUDGE HOLMES |
| Defendant/Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ALEXANDER MECHANICAL ) | |
| CONTRACTORS, INC., ) | |
| ) | |
| Third Party Defendant/ ) | |
| Counter-Plaintiff. ) | |

## **PLAINTIFF'S MOTION TO COMPEL**

COMES NOW Plaintiff, Johnson Marcraft, Inc. ("JMI"), by and through its undersigned counsel of record, and pursuant to Federal Rule of Civil Procedure 37(a), moves the Court for an order (a) compelling Defendant Western Surety Company ("Western") to answer Interrogatories 2-13, 17, 20 and 22 propounded by JMI, and (b) requiring Western to pay JMI's reasonable expenses incurred in making this motion, including attorney's fees. In support of this motion, JMI states as follows:

1. This case involves certain equipment custom manufactured by JMI for a construction project at the Blanchfield Army Community Hospital located at Fort Campbell, Tennessee (the "Project").

2. The Project's general contractor is M.A. Mortensen Company ("Mortensen"), a non-party to this action.

3.      On May 14, 2012, Mortensen entered into a Subcontract Agreement with the Third Party Defendant herein, Alexander Mechanical Contractors, Inc. ("Alexander"), for the plumbing and HVAC portions of the Project (the "Subcontract").

4.      Subsequently, on December 18, 2012, Alexander issued a Purchase Order to JMI seeking to purchase two custom air handling units (the "AHUs") for the Project for the purchase price of $2,242,340.00.

5.      On that same date, Alexander signed and submitted to JMI a New Customer Credit Application and Agreement ("NCCAA"), the last paragraph of which states:

> The Complete Agreement for the purchase and sale of equipment between [Alexander] and [JMI] is exclusively contained in the [JMI] Submittal[1] and Quote for custom manufactured equipment for which [Alexander] is requesting credit from [JMI]. Pursuant to the <u>Terms and Conditions of Sale</u> (included by reference in the Submittal and Quote, and available on Johnson Marcraft's website www.johnson-Marcraft.com), which are a part of this Agreement, payment is due 30 days from the date of [JMI's] invoice . . . All shipments by [JMI] are EXW Incoterms 2000, St. Louis, Mo.

(Original emphasis). A redacted copy of Alexander's signed NCCAA is attached to the Complaint as Exhibit B [Doc. #1-2].

6.      On December 28, 2012, Western issued a Subcontractor Labor and Material Payment Bond (the "Payment Bond") in connection with the Subcontract. A copy of the Payment Bond, which is also signed by Alexander, is attached to the Complaint as Exhibit C [Doc. #1-3].

---

[1] A "Submittal" is a set of documents that, by industry practice, are prepared by the seller for the buyer's approval, which contain detailed plans, drawings, specifications and other terms and conditions for custom manufactured air handling equipment.

7. Under the Payment Bond, Western agreed to, among other things, "pay for labor, materials, and equipment provided for use in the performance of the Subcontract."

8. On July 9, 2013, Alexander and JMI entered into a contact pursuant to which Alexander agreed to purchase, and JMI agreed to sell, two AHUs for the Project, as described in JMI's Submittals, for the purchase price of $2,242,340.00 (which amount was subsequently increased slightly to $2,249,710.00 pursuant to two change orders issued by Alexander).

9. The contract between Alexander and JMI was formed when Alexander signed and approved JMI's Submittals, each of which included JMI's Terms and Conditions of Sale. A copy of page 1 of each Submittal, as signed by Alexander, and JMI's Terms and Conditions is attached to the Complaint as Exhibit D [Doc. #1-4].

10. Paragraph 1 of JMI's Terms and Conditions provides in its entirety:

> Sale of goods by [JMI] to [Alexander] is made <u>solely on the terms and conditions hereof notwithstanding any additional or conflicting terms or conditions, oral or written, that may be contained in any other documents</u>. The goods sold hereunder are custom manufactured and are exclusively described in [JMI's] Submittal which incorporates by reference these Johnson Marcraft terms and conditions.

Doc. #1-4 at page 4 of 5 (emphasis added).

11. After Alexander signed JMI's Submittals, JMI proceeded to manufacture the AHUs, which were then shipped to the Project site.

12. On June 2, 2014, Alexander made a partial payment on one of the AHUs by issuing a check to JMI in the amount of $1,257,294.28.

13. On June 11, 2014, Alexander's check was returned to JMI for non-sufficient funds. A redacted copy of the returned check is attached to the Complaint as Exhibit E [Doc. #1-5].

14. Alexander ultimately failed to pay JMI $589,629.47, thereby leading JMI to submit a claim to Western under the Payment Bond.

15. On December 9, 2015, JMI filed the instant action against Western after Western denied JMI's claim under the Payment Bond.

16. JMI asserts three counts against Western, *to-wit*, breach of the Payment Bond (Count I), vexatious refusal to pay under Missouri law (Count II), and bad faith refusal to pay under Tennessee law (Count III).

17. As fully set forth in JMI's Complaint, JMI contends that Western wrongfully denied JMI's claim under the Payment Bond and did so without providing a substantive response to JMI or even conducting an investigation into JMI's claim.

18. More specifically, Western has never explained the basis for its denial of JMI's claim under the Payment Bond and none is apparent based on the transactional documents that were signed by Alexander (the NCCAA and JMI's Submittals), all of which clearly state the contract between JMI and Alexander is set forth in JMI's Submittals, including JMI's Terms and Conditions.

19. On March 25, 2016, JMI duly served its First Set of Interrogatories (the "Interrogatories") and First Request for Production of Documents on Western.

20. Among other things, the Interrogatories were designed to obtain information and an identification of the documents relating to Western's contentions in this case, including its affirmative defenses and the factual basis (if any) for Western's denials of certain allegations made in JMI's Complaint.

21. On May 2, 2016, Western served its responses to the Interrogatories by e-mail.

22. Western responded to most of the 22 Interrogatories by merely referring to its "Alexander Mechanical File," which Western labeled as "Exhibit A."

23. The cover letter that accompanied Western's e-mailed responses stated in part: "Please note, due to the size, Exhibits A, B and C will follow via First Class Mail."[2]

24. On May 5, 2016, JMI received Exhibits A, B and C in the mail.

25. Exhibit A consists of 538 Bates numbered pages from various sources, only some of which are Western's own business records.

26. On May 11, 2016, JMI's counsel called Western's counsel to request that Western amend its responses to the Interrogatories to, among other things, provide the information sought by the Interrogatories instead of merely directing JMI to "see Exhibit A."

27. On June 1, 2016, Western served Amended Responses to the Interrogatories, a copy of which is attached hereto as Exhibit 1.

28. Western's Amended Responses to the Interrogatories did not correct many of the deficiencies noted by JMI during the parties' May 11, 2016 telephone conference.

29. By e-mail exchange on June 6, 2016, Western advised JMI it was unwilling to provide any additional information to JMI in response to the Interrogatories, thereby leading JMI to file the instant motion.

30. The primary dispute between the parties concerns the propriety of Western responding to the Interrogatories by merely referring to a mass of documents ("Exhibit A"), from which JMI is supposed to somehow divine the answers to the questions posed.

---

[2] Exhibit B is Western's "Alexander Mechanical Underwriting File" and Exhibit C is a manual regarding Western's claims handling process, consisting of 108 pages and 48 pages, respectively, neither of which are germane to the instant motion.

31. JMI contends that Western's Amended Responses to the Interrogatories are not proper under Rule 33(d) and, because they are evasive and incomplete, must be treated as a failure to answer under Rule 37(a)(4).

32. JMI also contends that, pursuant to Rule 37(a)(5), Western should be required to pay JMI's reasonable expenses incurred in making this motion, including attorney's fees.

33. Pursuant to Local Rule 37.01(a), JMI has attached as Exhibit 2 hereto the parties' *Joint Statement of Matters at Issue in Discovery Dispute*.

34. Pursuant to Local Rule 37.01(c), JMI's counsel hereby certifies that he has conferred with counsel for Western in a good faith effort to resolve by agreement the issues raised and that counsel have not been able to do so. Specifically, counsel discussed all issues by telephone on May 11, 2016 for approximately 75 minutes, and then exchanged e-mails on May 27, 30 and 31, 2016, and again on June 6, 2016. The issues resolved and the issues that remain unresolved are itemized in the *Joint Statement of Matters at Issue in Discovery Dispute*, attached hereto as Exhibit 2.

35. In further support of this Motion, JMI hereby incorporates by reference the arguments and authorities set forth in its Memorandum in Support filed concurrently herewith.

WHEREFORE, JMI requests that the Court enter an order:

(a) Compelling Western to provide proper answers, under oath, to Interrogatories 2-13, 17, 20 and 22 within ten days;

(b) Requiring Western to pay JMI's reasonable expenses incurred in making the instant motion; and

(c) Granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

**LEWIS RICE LLC**

Dated: June 13, 2016    By: /s/ Duane L. Coleman
    Duane L. Coleman, #35898MO (pro hac)
    C. David Goerisch, #48418MO (pro hac)
    600 Washington Avenue, Suite 2500
    St. Louis, Missouri 63101
    (314) 444-7600
    (314) 241-6056 (facsimile)
    dcoleman@lewisrice.com
    dgoerisch@lewisrice.com

-and-

**WYATT, TARRANT & COMBS, LLP**
    James C. Bradshaw III, #13170
    2525 West End Avenue, Suite 1500
    Nashville, Tennessee 37203-1423
    (615) 244-0020
    (615) 256-1726 (facsimile)
    jbradshaw@wyattfirm.com

Attorneys for Plaintiff Johnson Marcraft, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Motion to Compel was served via the Court's electronic filing and service system on the persons listed below, counsel of record for Defendant and Third Party Defendant, on this 13th day of June, 2016.

    Gregory L. Cashion
    J. Ross Hutchison
    **SMITH CASHION & ORR, PLC**
    231 Third Avenue North
    Nashville, Tennessee 37201
    gcashion@smithcashion.com
    rhutchison@smithcashion.com

    /s/ Duane L. Coleman