# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOHNSON MARCRAFT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:15-1482 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| WESTERN SURETY COMPANY, | ) | |
| | ) | MAGISTRATE JUDGE HOLMES |
| Defendant/Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALEXANDER MECHANICAL | ) | |
| CONTRACTORS, INC., | ) | |
| | ) | |
| Third Party Defendant/ | ) | |
| Counter-Plaintiff. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO WESTERN SURETY COMPANY'S MOTION TO STRIKE JOHNSON MARCRAFT, INC.'S MOTION TO COMPEL, OR IN THE ALTERNATIVE, WESTERN SURETY COMPANY'S RESPONSE TO JOHNSON MARCRAFT, INC.'S MOTION TO COMPEL

Plaintiff, Johnson Marcraft, Inc. ("JMI"), respectfully submits this memorandum in opposition to Western Surety Company's Motion to Strike JMI's Motion to Compel, or in the Alternative, Western Surety Company's Response to JMI's Motion to Compel [Doc. #42].

In a transparent attempt to distract the Court from the issues raised by JMI's Motion to Compel [Doc. ##38 and 39], Defendant Western Surety Company ("Western") engages in an offensive and unwarranted personal attack on JMI's lead counsel. The Court should take a dim view of Western's less-than-professional smear tactics, which have no bearing on the merits of JMI's Motion to Compel. The simple fact of the matter is that JMI and Western have a substantial discovery dispute that requires resolution by the Court since the parties have

reached impasse on the issues involved. As discussed below, Western's assertion that JMI's Motion to Compel should be stricken because JMI supposedly failed to comply with Local Rule 37.01(a) is without merit and marks a further attempt by Western to obstruct JMI's discovery and cloak its bad faith refusal to pay JMI's claim under the Payment Bond.

### Background

On March 25, 2016, JMI served its First Request for Production of Documents and First Set of Interrogatories on Western. *See* Exhibit 1 attached hereto. On April 5, 2016, Western called JMI's counsel to request the discovery requests in Word format, which JMI's counsel promptly provided. *See* Exhibit 2 attached hereto. Western did not timely respond to JMI's discovery requests. Instead, on April 29, 2016 (after the due date), Western advised JMI for the first time that that its responses would be late and instructed JMI's counsel to contact its counsel with any questions or concerns. *See* Exhibit 3 attached hereto. Because JMI did not object to Western's responses being served out of time, it did not contact Western's counsel.

On May 2, 2016, Western e-mailed its responses to JMI. Western responded to most of JMI's interrogatories by referring to the documents in its "Alexander Mechanical File," which Western labeled as "Exhibit A."[1] The letter accompanying Western's responses explained that "due to the size, Exhibits A, B and C will follow via First Class Mail." *See* Exhibit 4 attached hereto.

On May 5, 2016, JMI received Western's documents in the mail. Upon receiving the documents, JMI learned that "Exhibit A" consists of 538 Bates numbered pages from various

---

[1] Western now calls the documents contained in "Exhibit A" its "Alexander Claim File." *See* Western's Motion to Strike at 4 (emphasis added). This name change is misleading because "Exhibit A" does not purport to be a "Claim File" and many of the documents included therein predate JMI's claim under the Payment Bond, submitted to Western on June 26, 2015.

sources, only some of which are Western's own business records. In addition, "Exhibit B" is Western's "Alexander Mechanical Underwriting File" and "Exhibit C" is a manual regarding Western's claims handling process, consisting of 108 pages and 48 pages, respectively.

On May 11, 2016, JMI's counsel called Western's counsel in a good faith attempt to address and resolve the issues with Western's discovery responses. During this conversation, which lasted approximately 75 minutes, JMI identified each response it believed to be insufficient and explained the basis for its belief, even citing case authorities for Western to consider. The discussion concerning Western's interrogatory responses centered primarily on whether Western had permissibly utilized the Rule 33(d) option to produce business records rather than providing narrative answers and, if so, whether Western had sufficiently identified the documents containing the responsive information as required by Rule 33(d)(1). At the conclusion of the telephone conference, Western's counsel (Ross Hutchison) stated he would confer with Greg Cashion and they would be back in touch with JMI's counsel the following week (the week beginning May 16, 2016).

JMI did not hear back from Western the week of May 16, 2016. Nor did JMI hear from Western the week of May 23, 2016. Accordingly, on May 27, 2016, JMI sent an e-mail to Western's counsel (both Greg Cashion and Ross Hutchison) advising that JMI intended to file a motion to compel after Memorial Day weekend and, pursuant to Local Rule 37.01(a), attached a Joint Statement recounting the matters in dispute that the parties discussed back on May 11, 2016. *See* Exhibit 5 attached hereto. The Joint Statement did not reflect Western's position on the issues because Western had not responded back to JMI during the two and one-half week period following the parties' telephone conference. As drafted, the Joint Statement included Mr. Cashion's electronic signature on behalf of Western. *Id.*

3

On May 30, 2016, Western's counsel sent an e-mail to JMI stating in part: "I do not dispute that the matters outlined in the Joint Statement were discussed on May 11, but the purpose of the Joint Statement is not for you to solely give your position regarding the disputed discovery." *See* Exhibit 6 attached hereto (original emphasis). The subject e-mail also claimed that JMI had agreed to not file a motion to compel without first calling Western's counsel and then stated "we will attempt to provide any additional information that we believe to be required per the interrogatories posed and applicable law." *Id.*

Later that same day, JMI's counsel sent a reply by e-mail stating in relevant part:

> I am surprised and disappointed by your trailing e-mail, which reflects a serious lack of honesty. When we spoke on May 11 about the deficiencies with Western's discovery responses, you told me your wife was expecting Memorial Day weekend. You also stated that you would call me the following week (the week beginning May 16) to advise if Western would revise its responses based on our discussion, including the case citations I provided to you. Thus, the statement in your e-mail that I "went so far as saying that [I] would give [you] a phone call before taking any additional action" is false. In fact, it doesn't even make sense – I had nothing more to say after our telephone conference on May 11 and was waiting to hear back from you. After waiting a week longer than the time you promised to get back to me, I moved forward with the preparation of the Joint Statement. Western cannot unilaterally prevent us from filing a motion to compel by choosing not to "be a part" of the Joint Statement, which is accurate based on our May 11 discussion and Western's failure thereafter to contact us as you said you would do.
>
> Going forward, please communicate with us in writing only. Thank you.

*See* Exhibit 7 attached hereto (original emphasis).

Approximately 25 minutes later, Mr. Hutchison sent to an e-mail to Mr. Cashion stating: "Do I call this guy out? I would like to discuss with you more tomorrow. This is

4

ridiculous and is complete BS." *See* Exhibit 8 attached hereto. A copy of this e-mail was also sent to two of JMI's lawyers, but not JMI's lead counsel, Duane Coleman. *Id.* The next day, May 31, 2016, Mr. Hutchison sent another e-mail to all counsel in the case stating:

> Last night in response to the below email I inadvertently sent a less than professional response by clicking "reply-all." This was not my intention and I apologize.
>
> As stated in my May 30th email, today I am in a mediation along with Mr. Cashion but the previously discussed discovery dispute will have my full attention tomorrow. I also agree that future communication should be in writing only as well.

*See* Exhibit 9 attached hereto.[2]

After seeing Western's e-mail of May 31, 2016, JMI held off preparing its motion to compel to allow Western one last opportunity to respond to the issues raised by JMI back on May 11, 2016. Late in the day on June 1, 2016, JMI received an e-mail from Western's counsel attaching the amended discovery responses. *See* Exhibit 10 attached hereto (the Amended Responses themselves are attached as Exhibit 1 to JMI's Motion to Compel [Doc. #38-1]). Unfortunately, Western's Amended Responses cured few of the issues previously raised by JMI.

Accordingly, on June 6, 2016, JMI's counsel sent an e-mail to Western's counsel (again, both Greg Cashion and Ross Hutchison) stating that JMI intended to move forward with a motion to compel. The e-mail further stated:

> Toward that end, attached is a revised version of the "Joint Statement of Matters at Issue in Discovery Dispute." As you will see, <u>Western's position (now that it has finally taken one) is set</u>

---

[2] JMI's counsel showed restraint by not responding to the "less than professional" e-mail sent by Western's counsel. It should be noted, however, that the explanation provided by Western is dubious since <u>all</u> counsel, including JMI's lead counsel, would have received the "less than professional" e-mail had Western's counsel actually clicked "reply-all."

> forth in the revised Joint Statement based on the content of your
> trailing e-mail and/or Western's Amended Responses.  To the
> extent you disagree or Western wishes to reconsider its position,
> please advise promptly, in writing.  Thank you.

*See* Exhibit 11 attached hereto (emphasis added).  As before, the Joint Statement included

Mr. Cashion's electronic signature on behalf of Western.  *Id.*

Subsequently, Western <u>never</u> contacted JMI to express any disagreement with the

accuracy of the Joint Statement generally or the specific provisions regarding Western's

position on the issues raised by JMI.  Rather, Western e-mailed JMI's counsel merely to

convey its beliefs that "there is no need to include the resolved issues in the joint statement"

and "we do not agree that it is appropriate to place your legal argument in a Joint Statement,"

even though the Joint Statement also included Western's legal argument (specifically, its

reliance on Rule 34(b)(2)(E)(i)).  *See* Exhibit 12 attached hereto.  JMI promptly replied to

Western's e-mail to state it understood Western was unwilling to change its position.  In

addition, after a month of trying to get Western to provide meaningful interrogatory answers

(including asking Western to simply identify by Bates numbers the documents that supposedly

contain information responsive to JMI's interrogatories), JMI challenged Western's assertion

that it was conducting itself in "good faith."  *See* Exhibit 13 attached hereto.

On June 13, 2016, JMI filed its Motion to Compel.  The next day, Greg Cashion called

JMI's lead counsel and angrily demanded that the motion be withdrawn on grounds he had not

"expressly approved" the Joint Statement attached to JMI's motion as Exhibit 2.  Over the

course of approximately 20 minutes, Mr. Cashion repeatedly raised his voice and insulted

JMI's lead counsel by questioning his intelligence and lecturing JMI's counsel about how

"things are done in Tennessee."  When JMI's counsel asked Mr. Cashion if he wished to

discuss the merits of JMI's Motion to Compel, Mr. Cashion made the threat: "We're going to continue to lie in the weeds, so we won't be discussing the merits for a long time." Between Mr. Cashion's rants (which JMI's counsel described as "telephone road rage"), JMI's counsel also inquired if he could identify anything in the Joint Statement that was inaccurate. After twice refusing to answer, Mr. Cashion admitted that the Joint Statement was accurate but persisted in demanding that JMI withdraw its Motion to Compel.[3] When JMI's counsel resisted Mr. Cashion's bully tactics and indicated the Motion to Compel would not be withdrawn, Mr. Cashion vowed to talk to JMI's local counsel, James Bradshaw, about the matter. JMI's lead counsel encouraged Mr. Cashion to do so, noting that Mr. Bradshaw had been privy to all the parties' communications before the Motion to Compel was filed (as reflected by Exhibits 1-12 attached hereto) and agreed with the motion.[4] After abruptly ending the call with JMI's lead counsel, Mr. Cashion called Mr. Bradshaw and was told as much.

On June 22, 2016, Western filed the instant motion to strike JMI's Motion to Compel. Notably, Western's motion does not assert that the Joint Statement is inaccurate in any respect. As discussed below, Western's motion is baseless and should be denied so that discovery in this case can proceed.

---

[3] On page 3 of its Motion to Strike, Western tries to soften the demand made by Mr. Cashion by claiming he asked JMI to withdraw the Joint Statement. This is not accurate. In actuality, Mr. Cashion insisted that JMI withdraw its Motion to Compel, repeatedly telling JMI's counsel that JMI "needs to start over."

[4] Mr. Cashion conceded during the telephone call that he, too, had received all the e-mails exchanged between counsel for the parties before JMI filed its Motion to Compel. Nevertheless, Mr. Cashion asserted that unless and until he "expressly approved" the Joint Statement, JMI could not file the Motion to Compel.

7

## Argument

Local Rule 37.01(a) provides in its entirety: "Prior to filing any discovery motion, counsel for the parties shall prepare a joint written statement of the matters at issue in the discovery dispute. The joint statement of issues shall be attached to any discovery motion." In the instant case, JMI prepared a Joint Statement identifying the specific discovery requests in dispute, setting forth each party's position regarding the merits of the disputes. This is precisely the level of detail the Court has recently indicated is required by Local Rule 37.01(a). *See* Order dated December 18, 2015 [Doc. #317] entered by Magistrate Judge Holmes in *Sony/ATV Music Publishing LLC v. 1729172 Ontario, Inc.*, Case No. 3:14-CV-01929 at p. 2.

As further required by Local Rule 37.01(a), JMI also attached the Joint Statement to its Motion to Compel. Significantly, Western does not contend that the Joint Statement is inaccurate in any respect. Western is precluded from making such a claim because JMI prepared the Joint Statement based on information that Western itself provided during the parties' communications preceding the filing of the Motion to Compel. At the time JMI sent the revised Joint Statement to Western, JMI even urged Western to speak up if it had any disagreement with the Joint Statement regarding Western's position on the matters in dispute, stating: "Western's position (now that it has finally taken one) is set forth in the revised Joint Statement based on the content of your trailing e-mail and/or Western's Amended Responses. To the extent you disagree or Western wishes to reconsider its position, please advise promptly, in writing." *See* Exhibit 11 attached hereto. Western <u>never</u> did so. Nor did Western ever contact JMI to advise that the Joint Statement was inaccurate in other respect, even though Western had ample time to do so before JMI filed its Motion to Compel nearly a full week later.

The only complaint JMI heard from Western about the Joint Statement was that the Joint Statement was <u>too</u> detailed. Specifically, Western asserted "there is no need to include the resolved issues in the joint statement" and "we do not agree that it is appropriate to place your legal argument in a Joint Statement." *See* Exhibit 12 attached hereto. The latter complaint lacks merit because the legal arguments are clearly part and parcel of each party's respective position that must be included in the Joint Statement. Further, the Joint Statement is evenhanded in that it briefly (and accurately) sets forth <u>both</u> party's legal arguments.

Western's complaint about the inclusion of resolved issues in the Joint Statement is also without merit because such information relates to the certification JMI must provide under Local Rule 37, *to-wit*, that JMI has conferred with Western in a good faith effort to resolve by agreement the issues with Western's discovery responses. As the Court will note, JMI expressly relied on the Joint Statement for purposes of making the requisite certification. *See* JMI's Motion to Compel [Doc. #38] at 6 (¶ 34). In sum, Western's complaints about the Joint Statement are much ado about nothing. Western has wasted the Court's and JMI's resources by bring the instant motion based on those complaints. In the process, however, Western has revealed its unreasonable and uncooperative stance in discovery.

Because the Joint Statement is accurate and Western has never contended otherwise, the Court should reject Western's "lie the weeds" contention that JMI's Motion to Compel should be stricken since Western's counsel did not "expressly approve" the Joint Statement. Local Rule 37.01(a) is not intended to empower a party to unilaterally avoid a discovery motion by being difficult, which is exactly what Western is trying to do here. As aptly recognized by another federal court, "Local Rules are meant to assist the Court, not to serve as a weapon in litigation for parties." *Kitson v. Bank of Edwardsville*, 240 F.R.D. 610, 611

(S.D. Ill. 2006). To the extent Western's counsel had any legitimate objection to the substance of the Joint Statement, all they had to do was say so. *See* Exhibit 11 attached hereto. JMI prepared the Joint Statement in good faith and then revised it in good faith once Western finally took a position on the discovery issues raised by JMI. In accordance with Local Rule 37.01(a), JMI then submitted the Joint Statement along with its Motion to Compel. Thus, contrary to Western's wild allegations, JMI has not "misrepresented" anything to this Court. Western has resorted to such vituperative rhetoric out of desperation because, as discussed below, Western has clearly failed to provide proper answers to JMI's interrogatories.

As the Court will recall, the Memorandum filed by JMI in support of its Motion to Compel included a section styled "The Applicable Law," which discusses the circumstances and manner in which a party can properly respond to interrogatories by producing its business records. *See* Doc. #39 at 2-6. More specifically, JMI outlined the various factors that Western must satisfy to demonstrate that its use of the business records option under Rule 33(d) is proper. *Id.* Notably, Western does not dispute any of the cases cited by JMI and fails to cite even a single case of its own holding that it properly used Rule 33(d) in responding to JMI's interrogatories. Instead, Western resorts to misconstruing the law and making unsupported factual arguments, which obviously do not satisfy Western's burden under Rule 33(d).

For example, Western shrilly contends that all of the hundreds of pages of documents it produced to JMI are its business records. *See* Western's Motion to Strike at 5. Western is either misleading the Court or it misapprehends the nature of a business record since many of the documents it produced are from various sources, including Alexander Mechanical, JMI and numerous third parties. These documents are not Western's business records. Similarly, the pleadings filed in this case (such as Alexander's Counterclaim) are not Western's business

records.  Thus, many of the "business records" upon which Western tries to rely in its interrogatory answers are not its business records at all.[5]

Western also fails to refute two key legal points, in particular, noted in JMI's Motion to Compel.  First, Rule 33(d) cannot be used to respond to contention interrogatories and, relatedly, Rule 33(d) may only be used when responding to interrogatories that require a compilation or analysis of an intensely objective nature.  *See* Doc. #39 at 3 (citing cases).  It is noteworthy that Western does not dispute that most of the interrogatories at issue are contention interrogatories and that none of the interrogatories require a compilation or analysis of an intensely objective nature.

---

[5]  *See Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 438 (D. Kan. 1987) (holding that documents submitted to EEOC prior to initiation of litigation in connection with investigation of charges of employment discrimination were not business records of the EEOC for purposes of providing business records in lieu of an answer to an interrogatory: "Plaintiff-intervenor's reliance on Fed.R.Civ.P. 33(c) [now Rule 33(d)] is not appropriate.  This rule allows a party to produce its own business records in lieu of interrogatories in certain instances.  The court finds unpersuasive plaintiff-intervenor's argument that because the [EEOC's] business is the investigation of charges of employment discrimination, documents submitted by employers are therefore the business records of the EEOC.  The court overrules plaintiff-intervenor's Rule 33(c) objection to answering these interrogatories."); *SEC v. Blackwell*, 2004 WL 6829614, at *3 (S.D. Ohio Jan. 15, 2004) (copy attached as Exhibit 14) (holding that documents submitted to SEC prior to initiation of litigation in connection with investigation of insider trading were not business records of SEC for purposes of providing business records in lieu of an answer to an interrogatory: "[T]hese documents are not the business records of the SEC, since the Commission admits that most of the pertinent documents referenced were obtained from Defendants.  The Commission does not point to, and apparently did not produce, documents such as internal investigative memoranda that arguably might be viewed as business records of the Commission.  The Commission therefore may not utilize the Rule 33(d) option and is required to provide narrative responses to Blackwell's interrogatories."); *Melius v. Nat'l Indian Gaming Comm'n*, 2000 WL 1174994, at *1, n. 2 (D.D.C. July 21, 2000) (copy attached as Exhibit 15) (holding that a submission that cross-references pleadings and exhibits is not an adequate interrogatory response and stating: "Plaintiff cannot seriously protest that Fed.R.Civ.P. 33(d), which excuses a party from providing a narrative answer to an interrogatory by producing business records, permits him to answer the interrogatory the way he did.  The assertion that pleadings, depositions, or exhibits are 'business records' under this rule has been rejected by every court to consider it.").

Second, in the limited circumstances where it is proper to utilize Rule 33(d), the party producing the documents is required by Rule 33(d)(1) to "specify the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Here, even if Western's use of Rule 33(d) was proper (which it clearly is not), Western has plainly not satisfied this identification requirement. As noted in several cases previously cited by JMI, the easiest way for Western to comply with the identification requirement is for Western to identify by Bates number which documents are supposedly responsive to each of the interrogatories at issue. *See Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 545 (D. Kan. 2006); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 385 (W.D. Tenn. 1999). Prior to filing its Motion to Compel, JMI asked Western to do exactly that but Western refused. This is the epitome of discovery gamesmanship. Assuming the files produced by Western actually contain the information responsive to JMI's interrogatories (which appears to be a dubious assumption), JMI's Motion to Compel could have been avoided had Western simply provided the Bates numbers to JMI. Even now, Western continues to argue that it should not have to specify the Bates numbers because the volume of documents it produced is "not . . . large." Western's Motion at 5. JMI disagrees, as "Exhibit A" alone is well over 500 pages of unorganized documents from various sources. This problem is not ameliorated by the fact that Western separately produced two other files, especially now that Western admits that information responsive to JMI's interrogatories "could be found in Exhibit B – the Underwriting File," too. *See* Western's Motion at 8.

With one exception, JMI will not belabor the Court by again discussing all the interrogatories at issue and the reasons Western "answers" are evasive and incomplete. Suffice it to say JMI has asked focused questions seeking an identification of facts and

documents relating to Western's conduct and assertions made by Western in this case. In response, Western merely tells JMI to "see Exhibit A," without identifying any facts or any documents in particular. JMI is not clairvoyant and cannot discern from "Exhibit A" what information might be responsive to its interrogatories. Therefore, the Court should compel Western to provide proper narrative answers, which should also refer to documents by Bates number when necessary to provide a complete response.

Interrogatories 12 and 13 are vitally important and deserve special attention. For convenience sake, these interrogatories are quoted below along with Western answers (Western's answer to both interrogatories was the same).

> **Interrogatory No. 12:** Please explain the basis for your denial of Paragraph 19 of Plaintiff's Complaint in your Answer and identify all facts and all documents reflecting or relating to such facts regarding the basis for your denial. (Paragraph 19 of Plaintiff's Complaint alleges: "On July 9, 2013, Alexander and JMI entered into a contact pursuant to which Alexander agreed to purchase, and JMI agreed to sell, two AHUs for the Project, as described in JMI's Submittals, for the purchase price of $2,242,340.00 (which amount was subsequently increased slightly to $2,249,710.00 pursuant to two change orders issued by Alexander)").

> **Interrogatory No. 13:** Please explain the basis for your denial of Paragraph 20 of Plaintiff's Complaint in your Answer and identify all facts and all documents reflecting or relating to such facts regarding the basis for your denial. (Paragraph 20 of Plaintiff's Complaint alleges: "The contract between Alexander and JMI was formed when Alexander signed and approved JMI's Submittals, each of which included JMI's Terms and Conditions of Sale (the 'Terms and Conditions'). A copy of page 1 of each Submittal, as signed by Alexander, and the Terms and Conditions is attached hereto as Exhibit D.").

> **ANSWER:** Objection. This request seeks the legal reasoning and theories of Western's counsel. Without waiving said objection, a dispute exists as to which documents are controlling. The date of contract and relative terms and conditions of the

> contract are disputed as JMI believes its submittals are controlling
> and Alexander believes its Purchase Order is controlling.

As the Court can see, Western provided <u>none</u> of the facts requested JMI. Had Western given a proper answer, it would have disclosed the facts which, in Western's view, disprove JMI's allegation that the contract between JMI and Alexander was formed on July 9, 2013 when Alexander signed and approved JMI's Submittals, each of which included JMI's Terms and Conditions. *See* Doc. #1-4. JMI is not asking Western to "accept JMI's characterization of the transaction," as Western now claims. *See* Western's Motion at 10. Quite to the contrary, JMI is searching for any facts that Western contends <u>refute</u> JMI's characterization of the transaction. These two interrogatories go to the heart of this case and Western should be required to provide the facts (if any) requested. In that regard, the Court should know that "Exhibit A" (Western's Alexander Mechanical file) contains documents <u>signed</u> by Alexander, its principals and other indemnitors which <u>acknowledge JMI's critical allegations</u>, namely, that JMI and Alexander "entered into a contract for services and materials on July 9, 2013," the date Alexander signed and approved JMI's Submittals, each of which included JMI's Terms and Conditions. The referenced documents from "Exhibit A" are attached hereto as Exhibit 16 with the relevant admissions highlighted.[6] Conversely, JMI has not found any documents in "Exhibit A" or any of Western's other files that contain facts supporting the statement that "Alexander believes its Purchase Order is controlling," as Western baldly asserts in its

---

[6] The documents attached as Exhibit 16 raise serious questions about the veracity of the positions taken in this case by Western and Alexander. Indeed, Western and Alexander have repeatedly asserted that the contract between JMI and Alexander is <u>not</u> reflected by the Submittals (which included JMI's Terms and Conditions) that Alexander undisputedly approved and signed on July 9, 2013. Western and Alexander have not been candid with the Court by making these assertions since it is now known that Western has documents in its own file signed by Alexander confirming that the contract was, in fact, formed on July 9, 2013.

14

responses to the subject interrogatories. The lack of any such facts explains why Western's responses to Interrogatories 12 and 13 do not refer to "Exhibit A" or any of the other files Western produced. Thus, it certainly appears that Western has no facts to support its denials of the allegations in paragraphs 19 and 20 of JMI's Complaint. If that is the case, Western should be required to amend its responses to Interrogatories 12 and 13 to state as much. If that is not the case, Western should be required to disclose the facts, under oath.

<u>Conclusion</u>

For the reasons set forth above and in JMI's previously-filed papers, the Court should enter an Order:

(1)    Denying Western's Motion to Strike [Doc. #42]; and

(2)    Granting JMI's Motion to Compel [Doc. ##38-39], including:

    (a)    Compelling Western to provide proper answers, under oath, to Interrogatories 2-13, 17, 20 and 22 within ten days;

    (b)    Requiring Western to pay JMI's reasonable expenses incurred in making the instant motion, in accordance with Rule 37(a)(5); and

    (c)    Granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

**LEWIS RICE LLC**

Dated: June 30, 2016            By: /s/ Duane L. Coleman
                                     Duane L. Coleman, #35898MO (pro hac)
                                     C. David Goerisch, #48418MO (pro hac)
                                     600 Washington Avenue, Suite 2500
                                     St. Louis, Missouri 63101
                                     (314) 444-7600
                                     (314) 241-6056 (facsimile)
                                     dcoleman@lewisrice.com
                                     dgoerisch@lewisrice.com

-and-

**WYATT, TARRANT & COMBS, LLP**
James C. Bradshaw III, #13170
2525 West End Avenue, Suite 1500
Nashville, Tennessee 37203-1423
(615) 244-0020
(615) 256-1726 (facsimile)
jbradshaw@wyattfirm.com

Attorneys for Plaintiff Johnson Marcraft, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Memorandum in Opposition was served via the Court's electronic filing and service system on the persons listed below, counsel of record for Defendant and Third Party Defendant, on this 30th day of June, 2016.

Gregory L. Cashion
J. Ross Hutchison
**SMITH CASHION & ORR, PLC**
231 Third Avenue North
Nashville, Tennessee 37201
gcashion@smithcashion.com
rhutchison@smithcashion.com

_____/s/ Duane L. Coleman_____