**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JOHNSON MARCRAFT, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 3:15-1482** |
| | ) | |
| **WESTERN SURETY COMPANY,** | ) | |
| | ) | |
| **Defendant/Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ALEXANDER MECHANICAL** | ) | |
| **CONTRACTORS, INC.,** | ) | |
| | ) | |
| **Third-Party Defendant/** | ) | |
| **Counter Plaintiff.** | ) | |

**To:    The Honorable Curtis J. Collier, District Judge**


**REPORT AND RECOMMENDATION**

Pending before the Court are the (i) Plaintiff's Motion for Partial Summary Judgment (Docket No. 79); (ii) Motion to Dismiss Count II of Johnson Marcraft, Inc.'s Complaint filed by Defendant Western Surety Company (Docket No. 80); (iii) Plaintiff's Motion for Sanctions Against Defendant Western Surety Company (Docket No. 88); (iv) Emergency Motion of Alexander Mechanical Contractors, Inc. to Determine Whether an Enforceable Settlement Agreement Exists (Docket No. 115); and, (v) Johnson Marcraft, Inc.'s Motion to Enforce Settlement Against Alexander Contractors, Inc. (Docket No. 116). By order entered on

1

December 18, 2017 (Docket No. 153), all dispositive motions were referred to the undersigned Magistrate Judge for report and recommendation.[1]

The Court has reviewed the motions and the parties' respective responsive filings.[2]  For the following reasons, the undersigned Magistrate Judge respectfully recommends that Western Surety Company's Motion to Dismiss Count II of Johnson Marcraft, Inc.'s Complaint (Docket No. 80) be DENIED and Plaintiff's Motion for Sanctions Against Defendant Western Surety Company (Docket No. 88) be GRANTED.[3]  Further, the undersigned respectfully recommends that Johnson Marcraft, Inc.'s Motion to Enforce Settlement Against Alexander Contractors, Inc. (Docket No. 116) be GRANTED and the Emergency Motion of Alexander Mechanical Contractors, Inc. to Determine Whether an Enforceable Settlement Agreement Exists (Docket

---

[1] Multiple other matters are pending as well.  Any matters not addressed herein that were referred to the undersigned Magistrate Judge are reserved. Previously, the Court had recommended that the pending Motion to Exclude Dr. Albert Gonzalez (Docket No. 110) be termed as moot, based on the Court's mistaken designation of that motion as having been filed solely by Alexander. Upon further review, the motion was filed jointly by Alexander and Western, and can therefore be pursued by Western, if it so chooses. Accordingly, no recommendation is made, at this time, as to disposition of that motion. The Court recognizes that the outcome of at least one other motion in limine raises the issue of whether Western can use an expert designated only by Alexander.  *See* Docket No. 113. However, the Court declines to further complicate this report and recommendation by substantive rulings on motions in limine, and therefore reserves that and other pending motions. Following ruling by the District Judge on this Report and Recommendation, the undersigned Magistrate Judge intends to hold a status conference, which will include in part an update from the parties on all other matters that remain pending at that time.

[2] The Court has also reviewed, and taken into consideration, the parties' respective motions for clarification (Docket Nos. 155 and 157).  The issues raised in those motions as requested clarifications are addressed herein.

[3] Ordinarily, a ruling on a discovery dispute would be a non-dispositive matter decided by the Magistrate Judge by order rather than by report and recommendation.  However, because the disposition of the motion for sanctions prohibits Defendant Western Surety Company from pursuing any choice of law defense, out of an abundance of caution, and for purposes of this case only, the undersigned makes a report and recommendation on the motion for sanctions.  If the District Judge determines that resolution of the motion for sanctions is non-dispositive, the portions of this report and recommendation related to the motion for sanctions may be reviewed under the clearly erroneous and contrary to law standard of 28 U.S.C § 636(b)(1)(A).

No. 115) be DENIED. Based on the recommendation that the settlement between Plaintiff Johnson Marcraft, Inc. and Defendant Alexander Mechanical Contractors, Inc. be enforced, and because there is no other timely and substantive opposition to the motion, the undersigned also respectfully recommends that the Plaintiff's Motion for Partial Summary Judgment (Docket No.79) be GRANTED.

## I.     MOTION TO DISMISS AND MOTION FOR SANCTIONS

### A.     Background

The underlying relationships and transactions between the parties giving rise to this lawsuit are recited in the Court's memorandum of June 22, 2016 (Docket No. 40). Those facts are not again recited here except as necessary to add context to the pending matters.

In this breach of contract action, JMI asserts additional claims in Count II for vexatious refusal to pay a claim under Missouri law (Docket No. 1 at 10-11), and, alternatively, for bad faith refusal to pay a claim under Tennessee law in Count III (Docket No. 1 at 11-12). In its answer (Docket No. 17), Western asserts as a first affirmative defense that the complaint generally fails to state a claim upon which relief can be granted.

Fairly early in this case, a discovery dispute arose about the sufficiency of responses by Defendant Western Surety Company ("Western") to discovery requests propounded by Plaintiff Johnson Marcraft, Inc. ("JMI"). *See* Plaintiff's Motion to Compel at Docket No. 38. One of the specific discovery requests in dispute was JMI's contention interrogatory seeking description of each ground on which Western alleged that JMI's complaint failed to state a claim with all supporting facts and documents. *Id*. at ¶¶ 20-31. *See also* Order entered on July 8, 2016, Docket No. 46 at 7-9. In its ruling on this discovery dispute, the Court held that this was a proper discovery

3

request, which Western could not answer, as it originally did, by simply referencing produced documents. *Id.* Western was therefore compelled to "provide the requested information in narrative format under oath with specific detail" and to further "identify [in its sworn response] by specific Bates numbers the documents that Western contends support or relate to its position, as stated in the narrative interrogatory response." *Id.* at 9.

There is no dispute that in its amended discovery responses, Western identified only one ground as being the basis for its defense of failure to state a claim, namely, that no money is due or owing to JMI because JMI allegedly did not properly fabricate the materials in question. *See* Docket No. 62-1 at 4-5 and Docket No. 102 at 1-2. Despite not having identified any other grounds for its failure to state a claim defense, on April 28, 2017, Western filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), seeking dismissal of Count II of the complaint as failing to state a claim, based on choice of law arguments (Docket Nos. 80 and 82). Upon the filing by Western of the motion to dismiss on grounds that Tennessee law, not Missouri law, applies and precludes JMI from recovering on its vexatious refusal to pay claim, JMI then sought sanctions for Western's failure to have timely disclosed the choice of law contention in its amended discovery responses (Docket No. 88), as directed by the Court's prior order. Docket No. 46 at 7-9.

This was only one of multiple discovery disputes in this case brought to the Court's attention. Following this first discovery contest, Western asserted that documents produced by JMI were insufficient. *See* Docket Nos. 50, 51, 52, 53, 55, and 56. The Court resolved this matter by order entered on November 10, 2016 (Docket No. 57), after a telephonic discovery conference. Then, JMI raised issues of the adequacy of Western's compelled discovery responses (Docket Nos. 62, 63, ad 66) and the adequacy of Alexander's discovery responses (Docket Nos. 64 and 65). Because of the parties' failure to comply with the Court's procedures for resolution of

discovery disputes, the Court denied those motions (Docket No. 67), without prejudice to refiling, which did not happen. After that, issues over the scheduling of third-party depositions arose (Docket Nos. 78, 85, and 93), in connection with which Western sought to hold out-of-district witnesses in contempt (Docket Nos. 103, 104, 105, and 106). This discovery dispute traveled to the District of Minnesota and back again. *See* Docket No. 109. The Court references these additional contests to show that the parties have a long and extensive history of discovery disputes in this case, as a result of which all of the parties have had multiple occasions, and therefore ample opportunity, to fully inform themselves of their respective discovery obligations and the consequences for failing to cooperate in discovery.

### B.    Analysis

When a party disobeys the pretrial orders of a federal court, the Federal Rules provide that the court may, on motion or on its own, issue "any just order, including those authorized by Rule 37(b)(2)(A)(ii)-(viii). Fed. R. Civ. P. 16(f)(1). The "just orders" authorized by Rule 37(b)(2)(A)(ii)-(viii) include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). Under Rule 16(f), "[t]he district court has discretion to impose whichever sanction it feels appropriate under the circumstances." *Clarksville-Montgomery School System, v. U.S. Gypsum Co.*, 925 F.2d 993, 998 (6th Cir. 1991).

When applying the substantially similar Rule 37, the Sixth Circuit employs a four-factor test to determine whether a sanction (even one other than dismissal) is appropriate:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the

> fourth factor in regard to a dismissal is whether less drastic sanctions
> were first imposed or considered.

*Doe v. Lexington–Fayette Urban County Government,* 407 F.3d 755, 766 (6th Cir.2005) (quoting

*Freeland v. Amigo,* 103 F.3d 1271, 1277 (6th Cir.1997)). The party seeking to avoid a sanction

"has the burden of showing that his failure to comply was due to inability, not willfulness or bad

faith." *United States v. Reyes,* 307 F.3d 451, 458 (6th Cir.2002).

As the basis for its failure to disclose a choice of law defense in its discovery responses,

Western argues that the defense is not novel and should have been expected by JMI because it

cannot recover under both state law theories.  Docket No. 102 at 2.  Western further contends that

there is no prejudice to JMI because the evidence making up the choice of law defense has been

brought to the attention of JMI through the motion to dismiss itself, and because discovery could

be reopened on this issue.  *Id*. at 3-4.

Western misses the mark in a number of directions.  First, the Federal Rules permit a party

to plead alternative relief.  Fed. R. Civ. P. 8(d)(2).  Rule 8 expressly provides that, "[i]f a party

makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id*.

Western clearly contends, under its general failure to state a claim defense, that neither of the

alternative statements made by JMI in Count II is sufficient because Tennessee law applies and

the relief sought is unavailable under Tennessee law, and it was therefore incumbent upon Western

to identify this choice of law ground in its discovery responses.

JMI specifically asked in discovery for Western to describe the grounds for any contention

that the complaint failed to state a claim. When a dispute arose over the sufficiency of Western's

responses to that discovery request, the issue was presented to the Court, and was intensely

contested.  The Court compelled Western to identify **all of its contentions of failure to state a**

**claim**, and that direction was clear and unambiguous. Whether or not JMI should have expected

Western to raise this as a ground for failure to state a claim is beside the point, and completely ignores the Court's instructions.

Further, Western cannot now claim that its failure to identify the choice of law argument earlier was an inadvertent omission. Nor can Western rely on any lack of clarity in the Court's directions about Western's obligations in responding to JMI's contention interrogatories. While the Court stops short of finding that Western's actions rise to the level of bad faith, the Court does find Western's failure to identify choice of law as a ground for its failure to state a claim defense to be in willful disregard of the Court's order compelling detailed disclosure of all grounds for that defense. Western has made no showing that its failure to follow the Court's order was due to some inability to comply.

Further, the Court finds that Western's failure to disclose this contention is prejudicial to JMI. Western bases its Motion to Dismiss on facts that would at least generate, if not require, additional discovery, including but not limited to, the intent of the parties (Docket Nos. 80 at 2 and 82 at 7), the order in which the subject Payment Bond was signed (Docket No. 82 at 2, n.3), and the location where the Payment Bond was signed (Docket No. 82 at 12-13). JMI had no opportunity for such discovery, because the deadline for completion of discovery expired on April 28, 2017 (*see* Order at Docket No. 72), the same date on which Western filed its Motion to Dismiss.[4]

---

[4] The discovery deadline was extended to May 22, 2017, solely to accommodate taking one deposition that could not be scheduled prior to the April 28 deadline. *See* Docket No. 75. Given the Court's determination that Western's choice of law defense should have been identified in response to JMI's contention interrogatory, the Court would not have been inclined to reward Western for its failure to comply with the Court's orders by extending the discovery deadline for purposes of the Motion to Dismiss.

With respect to the severity of the sanction and prior warning, the Court notes that the lesser sanction of compelling responses was already afforded to Western. *See* Order at Docket No. 46.[5] Western thus had its chance to cooperate in discovery prior to imposition of sanctions. Further, the Court's earlier order clearly and explicitly instructed Western to comply with its discovery obligations, which Western elected not to do. Western's disregard for the opportunity given by the Court to provide a detailed response of all grounds for its claimed defenses compels the conclusion that no lesser sanction would be effective, nor is a lesser sanction warranted at this procedural posture in this case. *See e.g. Universal Health Group v. Allstate Insurance Company*, 703 F.3d 953 (6th Cir. 2013) (dismissal warranted by plaintiff's discovery violations that prejudiced defendant, even without explicit warning).

For all of these reasons, Western is appropriately prohibited under Rule 37(b)(2)(A)(ii) from asserting its choice of law arguments with respect to Count II of the complaint as a sanction for failing to disclose choice of law as a ground for its failure to state a claim defense, as directed by the Court's order compelling that information.[6] JMI's Motion for Sanctions (Docket No. 88) should therefore be GRANTED and Western's Motion to Dismiss (Docket No. 80) should therefore be DENIED. The Court further finds that imposition of this sanction is sufficient in and

---

[5] While the Court may not have explicitly warned Western of all of the consequences of its continued failure to cooperate in discovery, the Court repeatedly expressed to all of the parties its displeasure with their lack of cooperation in discovery in this case. *See* Orders at Docket Nos. 46, 57, 67, and 93. Additionally, as noted, there have been multiple discovery disputes in this case, as a result of which all parties should be fully knowledgeable of the consequences for failing to cooperate in discovery.

[6] To be clear, this report and recommendation does not extend to precluding Western from defending against the vexatious refusal to pay claim on the merits, and is limited to prohibiting Western from contending that the claim is governed by and fails under Tennessee law.

of itself, such that an award of attorney's fees in addition would be unjust. Accordingly, the Court declines to award attorney's fees to JMI.[7]

Additionally, JMI has clearly elected to proceed with its vexatious refusal to pay claim under Missouri law in Count II as the alternative to its bad faith refusal to pay claim under Tennessee law in Count III. JMI should therefore be precluded from pursuing Count III for the remainder of trial preparation and trial in this case. This election is only as between Count II and Count III. It does not impact any other claims made in the Complaint.[8]

## II. SETTLEMENT

### A. Background

The parties' conflicting positions over whether a settlement occurred between JMI and Third-Party Defendant Alexander Mechanical Contractors, Inc. ("Alexander") is collateral to the underlying litigation in this case. For that reason again, the Court does not find it necessary to detail the entire procedural history of this case. Instead, the Court will begin its discussion with the circumstances of the parties' attempt at settlement that resulted in the instant dispute.[9]

---

[7] If, however, this recommendation is modified to permit Western to proceed with its choice of law arguments, depending on the extent of the modification, the Court would be inclined to entertain a modified request for sanctions seeking attorney's fees, given the amount of time and resources that have been spent on this issue.

[8] Western and Alexander apparently construe the Court's earlier recommendation that JMI be found to have elected to proceed solely on its vexatious refusal to pay claim under Missouri law as including that JMI be precluded from pursuing its breach of contract claims under Count I of the Complaint. *See* Docket No. 157 at 3-4. Because the only alternative relief sought by JMI was as between Count II and Count III, the scope of the election directed by the Court could only have extended to those two counts. Any interpretation that the Court intended to also preclude JMI from pursuing Count I is tortured at best. Nevertheless, whether the misapprehension was feigned or real, this clarifies the Court's recommendation, which is that JMI be precluded from pursuing Count III only.

[9] Unless otherwise noted, the stated facts are not disputed.

After prior unsuccessful attempts at settlement, principals of JMI and Alexander began communicating directly in August of 2017 (without involvement of counsel) about the potential for settlement.[10]  At some point, JMI President Tim Scharf and Alexander President Bill Alexander believed they were close enough to reaching a settlement that they brought in the lawyers to document the terms.

On August 28, 2017, Mr. Alexander sent a draft release and settlement agreement, which had been drafted by Alexander's counsel, to Mr. Scharf.   Mr. Scharf subsequently forwarded the draft release and settlement agreement to his attorneys, who then notified Alexander's counsel by email on August 30, 2017 that the proposed language of the draft settlement agreement was unacceptable.  The point of discord about the settlement agreement was whether it would include a release of JMI's claims against Western.  At that time, the parties acknowledged that there was no agreement to the global settlement originally provided for in Alexander's draft release and settlement agreement.

Nevertheless, settlement discussions continued between the attorneys, and also between Mr. Scharf and Mr. Alexander separately.   There is no dispute that on September 8, 2017, Alexander agreed to settlement in exchange for release of the claims by and between Alexander and JMI exclusive of Western.  *See* Alexander Motion, Docket No. 115 at 4-5.  On that date, Alexander's counsel confirmed this agreement by email to JMI's counsel, stating:

> Please find enclosed Alexander's acceptance of your settlement offer of $310,000 with a confidential settlement and release of all claims by and between JMI and Alexander.
>
> In addition, we will be following up on this email with a second email that includes an offer … on behalf of Western Surety

---

[10] The parties' versions of who initiated the settlement discussions differ (compare Docket No. 115 at 2 with Docket No. 116 at 3), but that fact is of no consequence to the outcome.

Company for full and final settlement of all claims by JMI against Western Surety Company.

Docket No. 116 at ¶ 17 and Exhibit G (Docket No.116-7).[11]  This email was accompanied by a draft release and settlement agreement (Docket No. 116-7 at 3).[12]

JMI's counsel quickly responded by email to Alexander's counsel stating:

> We note that neither the email below nor the draft agreement address the condition mentioned in Duane's August 31st email – ie., that the settlement with Alexander for $310,000 must provide that all of JMI's claim against Western Surety Company are preserved.  I have added language to this effect in the attached document.  Please let me know your thoughts about this language.
>
> Please note that our client has not yet reviewed the draft agreement, and we still need to get approval for that.  Nevertheless, I wanted to go ahead and send the revised draft now so that we could keep things moving.

Docket No. 116 at ¶ 19 and Exhibit I (Docket No. 116-9).   The specific language proposed by JMI was:

> This agreement does not contemplate the dismissal of claims brought by JMl against Defendant Western Surety Company ("Western Surety") in the Lawsuit, and JMI expressly reserves all rights it may have against Western Surety, including but not limited to the claims asserted by JMI against Western Surety in the Lawsuit.

Docket No. 116 at Exhibit M (Docket No. 116-13).  In all other respects the settlement agreement proposed by Alexander was unchanged.  *Compare* Docket No. 116-7 with Docket No. 116-13. A couple of hours later (still on September 8) counsel for Alexander replied to JMI's counsel as follows:  "David:  We have no problem with the language you added."  Docket No. 116 at ¶ 20 and Exhibit J (Docket No. 116-10).

_____

[11] The same law firm represents Western and Alexander.

[12] Shortly thereafter, JMI's counsel received another email with a settlement offer on behalf of Western, which stated that "[t]his offer of settlement is made separate and apart from Alexander Mechanical's acceptance of your previous offer of settlement related to the claims by and between JMI and Alexander."  Docket No. 116 at ¶ 18 and Exhibit H (Docket No. 116-8).

JMI's counsel then sent a later email, still on September 8, 2017, to Alexander's counsel, which stated:

> Since my last email, we have conferred with our client. The language of the agreement as last circulated between us is acceptable to our client. Attached is a PDF version of the agreement between JMI and Alexander. There are no substantive changes. I simply added today's date, accepted the previously circulated changes, and cleaned up the signature block. We are forwarding to our client for signature, and we assume that you will do the same since the agreement provides for counterpart signatures.

Docket No. 116 at ¶ 21 and Exhibit K (Docket No. 116-11). Thereafter, on September 11, 2017, JMI's counsel forwarded to Alexander's counsel an executed settlement agreement and release, signed by Mr. Scharf on behalf of JMI. Docket No. 116 at ¶ 23 and Exhibit M (Docket No. 116-13).[13] After JMI's counsel forwarded to Alexander's counsel the signed settlement agreement, Alexander's counsel responded that Alexander would not sign that settlement agreement, because JMI was not releasing its claims against Western. Docket No. 116 at ¶ 24 and Exhibit N (Docket No. 116-14). *See also* Docket No. 115 at 6.

When JMI's counsel countered that the settlement was agreed to by Alexander unequivocally, Alexander's attorneys replied that the statement, "[w]e have no problem with the language … added," was simply an indication of their initial review. Docket No. 116 at ¶ 26 and Exhibit P (Docket No. 116-16). *See also* Docket No. 115 at 6. Alexander's attorneys further explained that only when the proposed settlement agreement was presented to Alexander for review and signature did they perform research about the effects of release of principals and

---

[13] JMI's counsel again confirmed this agreement when serving its witness and exhibit lists on counsel for Alexander and Western, in an accompanying email that noted the documents were prepared before the settlement between Alexander and JMI and would require further refining as a result. Docket No. 116 at ¶ 22 and Exhibit L (Docket No. 116-12). Alexander does not contest that its counsel did not respond back to that email to dispute or deny that the claims between JIM and Alexander had been settled

sureties. Docket No. 115 at 6-7. As a result of that research, and ostensibly based on prior discussions between the parties directly, Alexander took the position that there was no meeting of the minds and therefore no mutual assent to the settlement. *Id*. at 7. The instant dispute ensued.

### B. Analysis

A district court has the inherent power to enforce a settlement agreement between parties in litigation. *Bamerliease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). A court can exercise this power "even if that agreement has not been reduced to writing." *Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985). The power of a trial court to enforce a settlement agreement "has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Kukla v. National Distillers Products Co.,* 483 F.2d 619, 621 (6th Cir.1973).

"Whether the parties actually reached an agreement is a question of fact for the district court," *Moore v. U.S. Postal Serv.*, 369 F. App'x. 712, 717 (6th Cir. 2010), which is governed by state contract law, *Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, 515 F. App'x. 494, 498 (6th Cir. 2013) ("Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law."). Here, JMI argues that Missouri law applies, because the last act necessary in reaching a settlement occurred on September 8, 2017, at 4:15 p.m., when JMI's counsel sent an email from St. Louis to Alexander's counsel confirming that the language of the settlement agreement was acceptable to JMI. *See* Docket No. 117 at 3-4 and No. 116-11. The Court finds it unnecessary to decide whether Missouri

or Tennessee law applies, because the outcome is the same regardless. Under either Missouri law or Tennessee law, Alexander's arguments fail.[14]

Alexander contends that there was no mutual assent because the final draft settlement agreement would not end Alexander's exposure to future liability, which Alexander maintains was the intent of the parties. It is well established in both Tennessee and Missouri that the mutual assent necessary to bind parties to a contract is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind. *Gurley v. King*, 183 S.W.3d 30, 43 (Tenn. Ct. App. 2005); *Youngs v. Conley*, 505 S.W.3d 305, 314 (Mo. Ct. App. 2016).

Objectively, the only reasonable construction of the communications between counsel for JMI and counsel for Alexander is that Alexander agreed to settle with JMI. There is no dispute that on September 8, 2017, Alexander agreed to settlement in exchange for release of the claims by and between Alexander and JMI exclusive of Western. *See* Alexander Motion, Docket No. 115 at 4-5. The email of that date from Alexander's counsel to JMI's counsel was accompanied by a draft settlement agreement and release to that effect. Docket No. 116-7.

The point where the parties depart on the question of whether a binding settlement exists is the additional language proposed by JMI to clarify that all of JMI's claims against Western Surety Company would be preserved. The answer to that question depends on whether the response of Alexander's counsel that the additional language was "no problem" evidences unequivocal acceptance and therefore assent.[15]

---

[14] Because many of Alexander's arguments are interwoven, the Court addresses them in tandem, rather than point-by-point.

[15] Notably, the settlement agreement and release proposed by Alexander remained unchanged by JMI except for the additional language preserving JMI's claims against Western. *Compare* Docket No. 116-7 with Docket No. 116-13.

The words "no problem" are clear and firm. Despite this objectively unequivocal language, Alexander now argues that there was no express acceptance by Alexander of the language preserving JMI's claims against Western.[16] Alexander maintains that there was no acceptance, because, despite stating that the language was "no problem," Alexander's attorneys did not fully comprehend the scope or implications of the reservation of rights. Alexander also argues that the additional language proposed by JMI is so vague as to preclude acceptance.

The fatal flaw in Alexander's arguments is that Alexander's counsel did not qualify its acceptance of the language preserving JMI's claims against Western in any way. Alexander points to nothing that would give JMI reason to know that the assent of Alexander's counsel was conditioned on client approval or on execution of a written agreement. Nor did Alexander's counsel respond that the proposed additional language was too vague, or that the additional language needed further clarification or wordsmithing. Regardless of Alexander's insistence otherwise, the settlement was unequivocally accepted when Alexander, through its attorneys, agreed that the language added to the settlement agreement proposed by Alexander was "no problem."

Alexander attempts to avoid this outcome by raising what is, as JMI correctly notes, essentially a mistake of law argument. However, a mistake of law is not grounds for avoiding a contract. *See, e.g., Fidelity & Deposit Co. of Maryland v. F.D.l.C.,* 54 F.3d 507, 512 (8th Cir. 1995) (Missouri courts generally do not grant relief for a mistake of law); *Davis v. Metropolitan Government of Nashville and Davidson County,* 620 S.W.2d 532, 535 (Tenn. Ct. App. 1981)

---

[16] Alexander does not argue—at least not directly—that its counsel lacked authority to settle the litigation with JMI, and cannot now pursue any such argument. *See Alan v. Toys R Us Holdings, Inc.*, 2012 WL 902920, at *2 (E.D. Tenn. Mar. 12, 2012) (underdeveloped arguments are waived).

("[I]gnorance of the law is not a mistake of fact, but of law. Ignorance of the law is no ground to rescind agreements or to set aside the solemn acts of the parties.") (citations omitted).

Alexander also contends that the settlement agreement is not enforceable because it was not signed. However, agreements need not even be reduced to writing to be enforceable contracts, unless required by law. *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 771 (Tenn. Ct. App. 1989) (citing *Rodgers v Southern Newspapers, Inc.*, 379 S.W.2d 797, 800 (Tenn. 1964)) and *Vulgamott v. Perry*, 154 S.W.3d 382, 390 (Mo. Ct. App. 2004). Given that verbal agreements can be enforced, it follows that lack of signatures is generally not fatal to the binding force of an agreement. *Moody Realty Co., Inc. v Huestis*, 237 S.W.3d 666, 674-75 (Tenn. Ct. App. 2007) signatures are not always essential to establish a binding contract) and *Robinson v. Powers*, 777 S.W.2d 675, 679 (Mo. App.1989) (same).

Alexander argues that a writing is required by law. According to Alexander, the reservation of JMI's rights against Western would "place Alexander **in the role of** being responsible for a debt" of another within the meaning of Tennessee's and Missouri's statute of frauds, which require a signed writing evidencing the parties' agreement. Docket No. 115 at 12 (emphasis added). The language upon which Alexander relies is that a signed writing is required "upon any special promise to answer for the debt … of another person." Tenn. Code Ann. § 29-2-101 and Mo. Rev. Stat. § 432.010. Alexander's arguments do not survive scrutiny. Whatever debt Alexander owes to JMI is its own. Alexander acknowledges that it is the principal obligor for any debt to JMI, and that Western is the surety. Docket No. 115 at 9. *See also* Third Party Complaint at Docket No. 27 and Answer to Third Party Complaint at Docket No. 28 (Alexander admitting Western's relationship as surety for Alexander's principal obligation to JMI). Alexander offers no authority

for its novel application of the statute to its circumstances as the prospective (but speculative) indemnitor of a debt for which it also the principal obligor.[17]

Further, even if Alexander had a basis to argue that the settlement is a promise to pay the debt of Western because of the indemnity relationship, the "main purpose rule" exception to the statute of frauds "eliminates the need for a written agreement whenever the promisor makes an oral promise to pay for the debt of another for his own personal or economic advantage." *Wolff Ardis, P.C. v. Kimball Products, Inc.*, 289 F.Supp2d 937, 941 (W.D. Tenn. 2003). The court in *Wolff Ardiss* noted that Missouri also follows the main purpose rule. *Id.* at 942 (citing *Sale v. Brown*, 396 S.W.2d 750, 756 (Mo. App. 1965)). Here, Alexander cannot support an argument that the main purpose of its settlement with JMI is anything other than for its own benefit in resolving its disputed obligation to JMI.[18]

Finally, Alexander has offered no authority to support its contentions that the settlement with JMI is unenforceable as contrary to "justice, fairness and equity." Docket No. 115 at 14. Alexander's argument is premised on the speculative "potential liability" that might result to Alexander if Western pursues a claim for indemnity against JMI. Although framed as a fundamental fairness argument, substantively this is the same premise as Alexander's argument

---

[17] The Court notes JMI's acknowledgment that any amount it recovers from Alexander reduces JMI's claim against Western.

[18] If Alexander is correct that the statute of frauds applies, the Tennessee Supreme Court, following the approach embraced by Missouri, has held that an email that includes the name of a party's attorney may satisfy the statute of frauds requirement of a signed writing, if the parties, through their attorneys, have evidenced an intent to finalize the transaction by electronic means under the Uniform Electronic Transactions Act. *See Waddle v. Elrod*, 367 S.W.3d 217, 226-29 (Tenn. 2012) (citing *Crestwood Shops, L.L.C. v. Hilkene*, 197 S.W.3d 641, 651-53 (Mo. Ct. App. 2006)). The specific transaction at issue in the *Waddle* case was a settlement agreement. Here, to the extent the statute of fraud applies at all, the Court finds that the emails between the parties' respective counsel demonstrate their intent to finalize the settlement electronically, and that the emails otherwise satisfy the statute of frauds requirement of a signed writing evidencing their intended settlement.

that it ought to be relieved of its bargain because of a mistake in its lawyers' comprehension of surety law. For the reasons stated above, the Court finds no basis in equity to afford the relief requested by Alexander. Under Missouri law, equity relieves a party from a mistake of law only where there is an "independent equity, as where the mistake is induced, or is accompanied by inequitable conduct of the other party." *Fidelity & Deposit Co. of Maryland v. F.D.I.C.*, 54 F.3d at 513 (citations omitted). Tennessee follows the same rule. *City of Shelbyville v. State ex rel. Bedford County*, 415 S.W.2d 139, 144-45 (Tenn. 1967). Alexander does not claim any such independent equity.

For all of these reasons, Johnson Marcraft, Inc.'s Motion to Enforce Settlement Against Alexander Contractors, Inc. (Docket No. 116) should be GRANTED and the Emergency Motion of Alexander Mechanical Contractors, Inc. to Determine Whether an Enforceable Settlement Agreement Exists (Docket No. 115) should be DENIED. The settlement agreement between JMI and Alexander (Docket No. 116-13) should be enforced.

### III.     MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A.     Background

Consistent with the requirements of the District Judge and the Initial Case Management Order (Docket No. 21 at ¶ N), on January 25, 2017, JMI filed a motion for leave to file a motion for partial summary judgment. Docket No. 68. In its motion for leave, JMI described the purpose of the motion for partial summary judgment as determining the terms of the contract between Alexander and JMI, and therefore the basis for JMI's claims against Western. *Id*. On January 27, 2017, Alexander and Western filed a joint response to JMI's motion for leave stating that, while they disagreed with the JMI's factual positions, "Alexander and Western do not oppose the Motion

itself and the relief sought therein—specifically, that JMI be granted leave to file is Motion for Partial Summary Judgment." Docket No. 69 at 1-2 (emphasis added).

On April 28, 2017, with leave of Court (Docket No. 70), JMI filed a motion for partial summary judgment (Docket No. 79), with accompanying statement of undisputed material facts (Docket No. 81) and memorandum of law (Docket No. 83). In its motion for partial summary judgment, JMI seeks judgment on the issue of the parties' contract, specifically that Alexander entered into a contract with JMI on July 9, 2013, when Alexander approved and signed JMI's Submittals (as defined in the Complaint at Docket No. 1, n.1 and discussed in more detail in JMI's filings), which included JMI's terms and conditions.

JMI's motion states that

> [m]uch of this litigation has involved efforts by Alexander and its bond company, Defendant Western Surety Company … to avoid the contract that was formed when Alexander approved and signed JMI's Submittals. None of these efforts, however, can change the simple and undisputed fact that a signed contract exists between Alexander and JMI.

Docket No. 79 at 1-2). JMI's motion further describes "the central issue in each claim in this case" as whether the contract between JMI and Alexander consists of JMI's Submittals (Docket No. 79 at 5, ¶ 15). The motion additionally references Western's denial of the existence of a contract between JMI and Alexander in its answer (Docket No. 79 at 3, ¶ 7).

Alexander filed a response in opposition to JMI's motion for partial summary judgment on May 19, 2017 (Docket No. 90). On that same date, Alexander also filed a response (Docket No. 91) to JMI's statement of undisputed material facts and Alexander's own statement of additional undisputed material facts (Docket No. 92) in support of its response to JMI's motion for partial summary judgment. Western did not file a response to JMI's motion for partial summary judgment or JMI's statement of undisputed material facts.

On June 2, 2017, JMI filed a further reply (Docket No. 96) in support of its motion for partial summary judgment, and response (Docket No. 97) to Alexander's statement of additional undisputed material facts. In footnote 1 of its reply, JMI expressly noted that Western did not respond to JMI's motion for partial summary judgment, and, to the extent that there was any misapprehension, clarified that the motion was directed to both Western and Alexander by stating: "For the sake of clarity and notwithstanding Western's failure to respond, JMI's Motion for Partial Summary Judgment applies to both JMI's claims against Western and the claims between JMI and Alexander." Docket No. 97 at 1, n.1. Despite these additional statements by JMI, Western made no effort to seek leave to respond to JMI's motion for partial summary judgment.

**B.      Analysis**

If the recommendation to enforce the settlement agreement between JMI and Alexander is adopted, all claims between JMI and Alexander will be resolved, including Alexander's opposition to JMI's motion for partial summary judgment.[19] Western failed to respond to either JMI's motion or JMI's statement of undisputed material facts. Upon that failure, JMI expressly described the scope of its motion for partial summary judgment in its reply (Docket No. 97 at 1, n.1) as directed at both Alexander and Western. However, even without JMI's additional statements in its reply,

---

[19] Previously, the Court had determined that JMI's motion for partial summary judgment was mooted by the settlement between JMI and Alexander. That determination was based on the fact that only Alexander responded in opposition to the motion, and the putative settlement between JMI and Alexander resolved all claims between them. For that reason, if the settlement is enforced, Alexander can no longer pursue its opposition to JMI's motion for partial summary judgment. That remains correct. However, the settlement expressly reserves all rights JMI may have against Western, including expressly the claims asserted by JMI against Western in this action. Docket No. 116-13 at 4. Upon further review of JMI's motion for partial summary judgment and the arguments made therein, the Court concludes that the motion more broadly addresses issues that were raised in the Complaint and have not been resolved. That Alexander cannot pursue its opposition to JMI's motion because of the settlement does not, as the Court initially determined, render the motion moot. Rather, the settlement between JMI and Alexander means, as discussed in more detail herein, that there is effectively no longer any timely and substantive opposition to the motion.

the blatancy of this intention is also dictated by common sense since JMI originally sued only Western, based on JMI's claims that the Submittals signed by Alexander constitute the contractual obligations secured by Western's payment bond.

Western suggests in its motion for clarification (Docket No. 157 at 3) that it failed to respond to JMI's motion for partial summary judgment because the motion was not addressed directly to Western and because the motion was concerned only with contractual issues that were "strictly between Alexander and JMI." The Court finds this position to be completely without merit or support.

As noted, in compliance with the District Judge's requirements, JMI filed a motion for leave to file a motion for partial summary judgment for the express purpose of determining the terms of the contract between Alexander and JMI, and therefore the basis for JMI's claims against Western. Docket No. 68. In a joint response to JMI's motion for leave, Alexander **and** Western stated that neither had any opposition to JMI's request for leave to file its intended motion for partial summary judgment. Docket No. 69 at 1-2 ("Alexander **and** Western do not oppose the Motion itself and the relief sought therein—specifically, that JMI be granted leave to file is Motion for Partial Summary Judgment.") (emphasis added). Western clearly contemplated that its position in this litigation would be impacted by the JMI's motion for partial summary judgment. Western's attempts to now explain away its failure to respond to the motion have no traction.

Further, contrary to Western's contentions, JMI has made clear throughout this case its contention that the Submittals signed by Alexander constitute its contract with JMI, for which JMI claims a right to payment under Western's payment bond. The complaint in this case, which was filed only against Western, asserts that the Submittals signed by Alexander formed the contract with JMI. Docket 1 at ¶¶ 19-20. Count I of the complaint makes a claim against Western based on its alleged breach of the payment bond issued by Western securing payment of Alexander's

obligations under the Submittals. Docket No. 1 at ¶¶ 14-15, 17-18, 40-55. In its answer, Western denied JMI's allegations that the signed Submittals constitute the contract between Alexander and JMI. Docket No. 17 at ¶¶ 19-20. Western cannot reasonably claim a lack of understanding that the existence of a contract between JMI and Alexander is a core issue in this litigation, or that this issue is solely one between JMI and Alexander.

Any action that Western took, or failed to take, based on its reliance upon Alexander's defenses was with the risk that Alexander might settle with JMI and leave Western to fight on its own. That is a risk that Western assumed. Whether or not Western made its intention to rely on Alexander's defenses clear does not change the fact that Western could have easily protected itself against the risk of Alexander's departure from the case by settlement by joining in filings made by Alexander, either as joint filings (as Western did in jointly responding with Alexander to JMI's motion for leave to file motion for partial summary judgment at Docket No. 69) or by separately joining or adopting filings made by Alexander. Given that Western and Alexander have been represented by the same counsel throughout these proceedings, joinder of their positions would have been especially simple.

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

To prevail on a motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d

265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

When a motion for summary judgment is properly supported under Rule 56, such as JMI's motion for partial summary here, the nonmoving party must respond with affirmative evidence in support of its opposition to the motion for summary judgment and establishing the existence of a genuine issue of material fact that requires that the action proceed to trial. *See Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002); *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989). As the Sixth Circuit has noted, in response to a properly supported motion for summary judgment, the nonmoving party is challenged to "put up or shut up" on critical issues. *Street v. J.C. Bradford & Co.*, 886 F.2d at 1478.

Under Rule 56.01of the Local Rules of Court, Western's failure to respond to JMI's statement of undisputed material facts indicates "that the asserted facts are not disputed for purposes of summary judgment." Local Rule 56.01(g). Accordingly, the Court is permitted to rely upon the facts set forth by JMI as the undisputed facts. Further, because no disputed facts are presented on the issue raised by JMI, that is, whether the Submittals signed by Alexander are its contract with JMI, all that remains to be determined is whether JMI is entitled to judgment on that issue as a matter of law.

The authority cited in the Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment (Docket No. 83) sufficiently demonstrates that JMI is entitled to judgment as a matter of law on the issue of a contract between JMI and Alexander. Simply put, Western, by its lack of response in opposition to JMI's motion, has failed to come forward with an explanation of applicable law that would compel any result other than that argued by JMI. *See InterRoyal Corp.*

23

*v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). Western's protest that it made clear in its earlier filings its intention to rely on Alexander's defenses is insufficient. A court need not make a party's case by scouring the record to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). Accordingly, JMI's motion for partial summary judgment should be granted.[20]

## V.     RECOMMENDATION

Based on the foregoing, the undersigned Magistrate Judge respectfully recommends that:

1.     Western Surety Company's Motion to Dismiss Count II of Johnson Marcraft, Inc.'s Complaint (Docket No. 80) be DENIED.

2.     JMI's Motion for Sanctions Against Defendant Western Surety Company (Docket No. 88) be GRANTED.

3.      JMI be found to have elected to proceed on its vexatious refusal to pay claim under Missouri law in Count II, and not be permitted to proceed with Count III.  All other claims made by JMI in the Complaint are unaffected by this Report and Recommendation.

4.     JMI's Motion to Enforce Settlement Against Alexander Contractors, Inc. (Docket No. 116) be GRANTED, and the settlement agreement between JMI and Alexander (Docket No. 116-13 at 4) be enforced.

---

[20] To be clear, the Court makes no finding about whether the issue of the contract between JMI and Alexander is controlled by Tennessee law or Missouri law. As noted by JMI, and as demonstrated by the cited authority, for purposes of the motion for partial summary judgment, it makes no difference which state's law applies because the outcome is the same. *See* Docket No. 83 at 10, n.4.

5.      The Emergency Motion of Alexander Mechanical Contractors, Inc. to Determine Whether an Enforceable Settlement Agreement Exists (Docket No. 115) be DENIED.

If these recommendations are adopted, JMI's Motion for Partial Summary Judgment (Docket No. 79) should also be granted, and the following additional recommendation is therefore made:

6.      JMI's Motion for Partial Summary Judgment (Docket No. 79) be GRANTED, and judgment entered in favor of JMI that Alexander entered into a contract with JMI on July 9, 2013, when Alexander approved and signed JMI's Submittals, which included JMI's Terms and Conditions.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation, in accordance with Local Rule 72.03(b), and must state with particularity the specific portions of this Report and Recommendation to which objection is made.  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


BARBARA D. HOLMES
United States Magistrate Judge